759 P.2d 643

**In the Matter of the APPEAL IN YAVAPAI COUNTY JUVENILE ACTION NO. J–9365.**

**No. 1 CA–JUV 417.**

Court of Appeals of Arizona, Division 1, Department B.

May 19, 1988.*

---

\* Redesignated as Opinion and Publication Ordered July 18, 1988.

Howard Hinson, Jr., Prescott, for appellant/Natural Father.

Rhonda Repp, Arizona Dept. of Economic Sec., Prescott, and Joyce & Frankel, P.A. by Virginia I. Duncan, Sedona, for appellee/Minor Child.

BROOKS, Presiding Judge.

This is an appeal from a juvenile court order terminating the parent-child relationship between appellant and his daughter. Four issues are raised:

1. Whether the juvenile court erred in denying appellant's motion to continue the termination hearing;

2. Whether the juvenile court erred in granting a motion for protective order which prevented appellant from calling the child to testify;

3. Whether the juvenile court erred in admitting a certified copy of the record of appellant's prior felony conviction; and

4. Whether the juvenile court's minute entry of September 17, 1987, was legally sufficient to terminate appellant's parental rights.

## FACTS

The child, who is the subject of this action, was born on September 30, 1976. In 1978, appellant and his wife separated; the wife took custody of the parties' two sons, and appellant retained custody of the daughter.

The daughter's first contact with Child Protective Services (CPS) occurred following a referral by Deputy Mike Dean of the Yavapai County Sheriff's office in June of 1984. Officer Dean found appellant and the child walking nude from the scene of an automobile accident and became concerned about possible sexual abuse. During an interview with caseworker Ryan Bond of CPS, the child denied any sexual abuse; however, she later stated that she had been afraid to talk with the caseworker for fear of retaliation from her father.

Two months later, while appellant was incarcerated on outstanding traffic warrants and the child was staying with relatives, the child told her aunt that her father had "put his thing inside me and it hurts me," and that she felt "nasty and bad." During interviews with Mr. Bond, and a police investigator, Detective Collins, the child, using anatomically correct dolls, demonstrated the type of sexual activity which had occurred and indicated that it had occurred sometime in July. The child also stated that her father had fondled her on approximately five occasions in the past, and that he threatened to beat her if she told anyone.

Following the interviews with Mr. Bond and the police, Roberto Murillo, M.D., a pediatrician, examined the child. He determined that her vagina had been penetrated and that the child's condition was consistent with her history of sexual abuse.

While still incarcerated in the Yavapai County Jail on traffic warrants, appellant was charged with sexually abusing his daughter. The Arizona Department of Economic Security (DES) then filed a dependency petition based upon the allegations of child molestation. Following a stipulation by the attorneys for DES and appellant, the juvenile court agreed to continue the dependency hearing until after the resolution of the criminal action. The court then declared the child to be a temporary ward of the court and placed her in the care, custody, and control of DES. After two unsuccessful placements in licensed foster homes, DES successfully placed the child in a third home where she has adjusted well and continues to receive proper treatment and therapy. Both the child and the foster family have expressed a desire for adoption.

Subsequently, pursuant to a plea agreement, appellant entered an *Alford*[1] plea of guilty to a reduced charge of sexual abuse, a class 5 felony, with one prior conviction, and received a four-year prison term. In March of 1987, prior to appellant's release from prison, DES filed a petition to terminate appellant's parental rights in accordance with A.R.S. § 8–533(B), alleging the following:

1. That appellant was deprived of his civil liberties as a result of his conviction;

2. That appellant had willfully abused his daughter emotionally, physically, and sexually;

3. That the felony for which appellant had been convicted was of such nature as to prove his unfitness to have future custody and control of his daughter; and

4. That appellant was unable to discharge his parental responsibilities due to a mental illness and that reasonable grounds existed to believe the condition would continue for an indeterminate period of time.

The juvenile court heard expert testimony from three psychologists, the CPS caseworker, and the natural father, as well as other evidence supporting the allegations of the petition, and concluded that the evidence satisfied the allegations. The juvenile court then entered an order terminating the parental relationship pursuant to A.R.S. §§ 8–533 and –537(B) by formal written order, and this appeal followed.

At the outset, we note that appellant does not challenge either the juvenile court's findings of fact or their sufficiency; rather, he alleges various procedural errors in his appeal. As has been so often stated, this court will accept the juvenile court's findings in support of termination of the parent-child relationship unless such findings are clearly erroneous. *In re Juvenile No. J–2255*, 126 Ariz. 144, 613 P.2d 304 (App.1980).

## DENIAL OF CONTINUANCE

■ Appellant first argues that the juvenile court violated his "due process" rights in denying his motion to continue the termination hearing. Originally, appellant filed this motion on the grounds that he needed more time to locate witnesses who would testify that he did not commit the crime for which he stands convicted; that he had located a psychologist who would testify favorably concerning his mental condition; and that he wished to call his daughter to testify. At the termination hearing, appellant renewed his motion to continue alleging, in addition, that DES' failure to file a pretrial statement prevented him from adequately preparing for the hearing.

DES conceded that it had not filed a pretrial statement, since such was not a requirement, but objected to the continuance if appellant sought only to procure witnesses whose sole testimony would be to dispute an issue already judicially resolved, namely, whether appellant had sexually abused his daughter. Both DES and the child's separately appointed counsel joined in objecting to any attempts by appellant to call the child as a witness, since all available psychologists' reports indicated that such an event would destroy her therapeutic progress, further traumatize her, and cause irreparable harm.

Motions to continue are addressed to the sound discretion of the trial court and its decision will not be reversed absent a clear abuse of discretion. *In re Estate of Kerr*, 137 Ariz. 25, 667 P.2d 1351 (App.1983). We find no abuse of discretion in the instant case.

First, in determining the necessity of pretrial statements in juvenile proceedings, we recognize the exclusive original jurisdiction of the juvenile court in severance actions as established in A.R.S. § 8–532:

A. The juvenile court shall have exclusive original jurisdiction over petitions to terminate the parent-child relationship when the child involved is present in the state.

B. The juvenile court shall continue to have exclusive original jurisdiction when the juvenile is in the legal custody of the juvenile court although the physical

**1.** *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

placement of the child is in another state pursuant to court order.

In addition, our supreme court has established exclusive Rules of Procedure for the Juvenile Court. Rule 1 provides in part:

> These rules govern the procedure for all matters in the juvenile court, including, without limitation, delinquency, neglect, dependency, ... and termination of parent-child relationships.

Our review of the juvenile rules discloses no requirement that parties in juvenile proceedings submit pretrial statements. Furthermore, A.R.S. § 8–537(B) provides no basis for incorporating the Arizona Rules of Civil Procedure into severance proceedings except as follows:

> The court's findings with respect to grounds for termination shall be based upon clear and convincing evidence under the rules applicable and adhering to the trial of civil causes.

Clearly, the plain language of the statute requires only that the juvenile court's *findings* with respect to the grounds for severance be established in accordance with the civil rules.

With regard to appellant's alleged need for additional time to locate witnesses, we note that appellant had seven months prior to the severance hearing to procure witnesses either through his own efforts or those of his court appointed counsel. No subpoenaes had been issued for any witnesses, and the only excuse which appellant offered for his delay in preparation was that "... [i]t's kinda hard, you know, you work 40 to 50 hours a week and all you've got is Saturday and Sunday and at night times, and it's pretty hard to find people."

The juvenile court remained unpersuaded by appellant's avowals concerning his preparation efforts, and we find no abuse of discretion in the court's denial of the motion to continue the termination hearing.

### THE PROTECTIVE ORDER

Appellant next argues that the trial court erred in entering a protective order which precluded him from calling his daughter to testify.

We are mindful that a parent in a termination proceeding has a right to confront witnesses when the witnesses' testimony goes to the heart of the termination proof. *In re Maricopa County Juvenile Action No. JS–4374*, 137 Ariz. 19, 667 P.2d 1345 (App.1983). Appellant argues that because he has continually denied molesting his daughter, he retained the right to call the child in order to dispute the "hearsay allegations of abuse." However, at the time of the termination hearing, appellant had already been adjudicated guilty of having sexually abused his daughter in Yavapai County Cause No. 11032. No appeal was filed from the judgment and sentence, and no post-conviction proceedings were ever instituted in accordance with Rule 32, Arizona Rules of Criminal Procedure. Thus, the issue of whether appellant had sexually abused his daughter was finally adjudicated and was not subject to collateral attack. *Bill v. Gossett*, 132 Ariz. 518, 647 P.2d 649 (App.1982).

Nevertheless, before issuing the protective order, the juvenile court heard testimony from doctors and caseworkers who had worked with both the child and appellant. John Dibacco, Ph.D., a psychologist, diagnosed appellant as having a severe personality disorder characterized by anti-social and maladaptive behaviors which would render him unfit to provide appropriate care for his child. Dr. Dibacco further testified that appellant's prognosis was poor, since no therapy existed to correct severe anti-social personality disorders. In addition, Dr. Dibacco testified that since appellant has never received treatment for the underlying offense, the risk remained that he would again abuse the child.

Mitchell Gelber, Ph.D., a psychologist, testified that the child had shown marked improvement in therapy and counseling sessions in relation to the molestation, and that she had expressed a desire to be adopted by her foster family. He further characterized her emotional state as extremely fragile and insecure with respect to adults. He stated that if she were to be subjected to questioning concerning the

molestation, she would regress and withdraw even further than before. According to Dr. Gelber, the mere knowledge of the impending severance hearing caused the child extreme anxiety and she began to exhibit the previous regressive behaviors, such as throwing tantrums, breaking things at home, fighting, showing disrespect to her foster parents, and exhibiting a general decline in school performance. Dr. Gelber related much from other counseling sessions, including the child's statements to him that appellant had sexually abused her; that he often physically beat her for no real reason; that he repeatedly told her that he could read her mind; that he knew what she was thinking even in her sleep; and that he often left her alone for long periods of time. Dr. Gelber further testified that the child remained utterly fearful of her father.

Jeffrey Hatch–Miller, Ph.D., a psychologist, had also evaluated appellant and worked with the child. His testimony completely supported Drs. Gelber and Dibacco.

After hearing testimony from the doctors, the CPS caseworker, and appellant, the juvenile court granted the motion for protective order and directed that the child not be required to testify. Under all of the circumstances, the evidence amply supported the juvenile court's ruling and we find no abuse of discretion.

### ADMISSION OF APPELLANT'S FELONY CONVICTION

■ Appellant next argues that the juvenile court erred in admitting a certified copy of his conviction in Cause No. 11032, because a review of the entire record in that case "yields no other conclusions than that [appellant] was mentally incompetent at the time the judgment and conviction was entered against him...." He then contends that the judgment and conviction is thus legally invalid and that the record of it should not have been entered into evidence in the termination proceedings.

We again reject appellant's attempts to collaterally attack his conviction· in the criminal case and find no error in the trial court's admission of the certified copy of the record of conviction as a self-authenticating document. *State v. Dixon*, 127 Ariz. 554, 622 P.2d 501 (App.1980). Further, there is no evidence in the current record to support appellant's suggestion that he was not competent to enter a plea of guilty in Cause No. 11032.

Appellant next argues that the juvenile court's minute entry of September 17, 1987, was legally insufficient to terminate appellant's parental rights under the requirements of A.R.S. § 8–538, which provides in part:

> Every order of the court terminating the parent-child relationship ... shall be in writing and shall recite the findings upon which such order is based, including findings pertaining to the court's jurisdiction. Such order shall be conclusive and binding on all persons from the date of entry.

Appellant further contends that the entry of the formal written order on September 25, 1987, (which includes findings of fact) cannot cure the "insufficiency" of the minute entry. He argues that under *State v. Garza*, 128 Ariz. 8, 623 P.2d 367 (App. 1981), he is burdened with the requirement of submitting his Notice of Appeal within fifteen days of a minute entry which contains no findings. In addition, he contends that even if the formal order later "cured" the alleged insufficiency, DES failed to properly lodge the judgment with the court, since the juvenile court did not wait five days for objections to form before signing the judgment as required under Rule 58(d), Arizona Rules of Civil Procedure. Rule 58(d) provides:

> 1. In case of a judgment other than for money or costs ... the judgment shall not be settled, approved, and signed until the expiration of five days after the proposed form thereof has been served upon opposing counsel unless the opposite party or his counsel endorses on the judgment an approval as to form.

While we question the application of Rule 58(d) in juvenile proceedings, we nevertheless conclude that appellant has failed to demonstrate any prejudice. *See Gutierrez v. Gutierrez*, 20 Ariz.App. 388, 513 P.2d 677 (1973). As the juvenile rules

do not provide for a motion for new trial, appellant's opportunity to attack the juvenile court's findings, and their sufficiency, lies in his presentation to this court. Since appellant has chosen not to contest the sufficiency of the juvenile court's findings in his appeal, we conclude that he has suffered no prejudice even if Rule 58(d) applied.

We further observe that the minute entry clearly contemplated the later filing of a formal order containing findings as required by A.R.S. §§ 8–537 and –538. Contrary to appellant's assertion that he has been unduly burdened by the rule in *State v. Garza,* our supreme court has since clarified the matter in *In re Juvenile Action No. S–933,* 135 Ariz. 278, 281, 660 P.2d 1205, 1208 (1982), holding that the requirements of A.R.S. § 8–538 must be complied with in severance proceedings before an order may be considered a final order and appealable under the juvenile rules. The supreme court further noted that neither the rule nor the statute required that the order be signed by the court to be effective.

## CONCLUSION

For all of the foregoing reasons, the judgment of the juvenile court is affirmed.

HAIRE, C.J., and EUBANK, J., concur.