NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

CATRINA K., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, E.K., C.K., J.R., *Appellees.*

No. 1 CA-JV 17-0218
FILED 12-5-2017

---

Appeal from the Superior Court in Maricopa County
No. JD27175
The Honorable Susanna C. Pineda, Judge

**AFFIRMED**

---

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Diane M. Johnsen joined.

---

**C R U Z**, Judge:

**¶1**         Appellant Catrina K. ("Mother") appeals the superior court's order severing her parental rights.  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**         Mother is the biological mother of E.K., born March 2006; C.K., born June 2008; and J.R.,[1] born August 2013.

**¶3**         In October 2013, neighbors called police to investigate possible abuse of E.K. by the children's father.[2]  Mother was not living with the family at the time, and her whereabouts were unknown.  The Department of Child Safety ("DCS") took custody of E.K. and C.K. and alleged they were dependent as to Mother due to abandonment and neglect.  About three months later, after J.R.'s birth, Mother left J.R. with a woman who did not have the appropriate paperwork to care for him, and DCS filed a supplemental petition alleging J.R. was dependent as to Mother due to neglect.[3]  E.K. and C.K. were found dependent as to Mother in January 2014, and J.R. was found dependent as to Mother in June 2014.

---

[1]     At the time DCS initiated dependency proceedings regarding J.R., it believed J.R. had a different father than E.K. and C.K.  However, it was later determined that all three children had the same father.

[2]     Father later pled guilty to child abuse and was ultimately sentenced to prison.  He is not a party to this appeal.

[3]     DCS later amended the petition to additionally allege J.R. was dependent due to substance abuse and Mother's failure to engage in the dependency proceedings regarding other children.  The superior court found J.R. dependent as to Mother on all alleged grounds.

¶4　　　　DCS moved for severance of Mother's parental rights to all three children in January 2015. It alleged Mother was unable to discharge her parental responsibilities because of a history of chronic abuse of dangerous drugs, controlled substances, and/or alcohol pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3); J.R. had been in an out-of-home placement for a cumulative period of six months or longer pursuant to A.R.S. § 8-533(B)(8)(b); all three children had been in an out-of-home placement for a cumulative period of nine months or longer pursuant A.R.S. § 8-533(B)(8)(a); and E.J. and C.K. had been in an out-of-home placement for fifteen months or longer pursuant to A.R.S. § 8-533(B)(8)(c).

¶5　　　　Approximately a year-and-a-half after DCS moved for severance, in June 2016, Mother was incarcerated for a drug-related offense. One month before the severance hearing's scheduled date, in March 2017, Mother moved to continue the hearing, explaining in part that she would be released from jail shortly after the severance trial,[4] was scheduled for an outpatient drug abuse assessment after her release, and wanted to engage in services. The superior court denied the motion. Mother moved again for a continuance during the hearing itself, but the court also denied that motion.

¶6　　　　At the two-day severance hearing, the DCS case manager testified DCS offered Mother random substance testing through TASC, substance abuse assessment and treatment through TERROS, case aide visitation, parent aide visitation, psychological evaluation, and case management services. She acknowledged Mother had completed a substance abuse assessment and participated in some programs while she was in jail, but she said DCS still believed Mother was unable to parent the children because Mother had been unable to demonstrate stability or sobriety outside an institutional setting over the past three years, failed to complete any of the services offered to her, and had no in-person contact with the children since 2014. Similarly, she testified DCS did not believe Mother had made the necessary behavioral changes for reunification with the children because she had not demonstrated lasting sobriety or stability, had only recently been released from incarceration and would need to "start her life over," and would need nine to twelve months to demonstrate the behavioral changes necessary to successfully reunite with the children.

¶7　　　　After the hearing, the superior court severed Mother's rights to the children on all alleged grounds. It found DCS had proven the

---

4　　　　Mother was released approximately two weeks before the severance hearing.

grounds for severance pursuant to A.R.S. § 8-533(B)(3) by clear and convincing evidence due to Mother's chronic substance abuse issues. It noted Mother's history of substance abuse dated back to when she was thirteen years old; Mother had not been able to discharge her parental responsibilities since before the initiation of the dependency action; and it was reasonable to believe Mother's chronic drug abuse would continue because, in part, she participated inconsistently in services, tested positive for illegal substances, was found in possession of illegal substances during the dependency, and was jailed for a drug-related offense until shortly before the severance hearing.

¶8        The superior court also found DCS had proven the grounds for severance pursuant to A.R.S. § 8-533(B)(8)(a), (b), and (c) because the children had been in an out-of-home placement for well over three years; DCS had made diligent efforts to provide appropriate reunification services to Mother; and Mother had been unable to remedy the circumstances that caused the children to come into care. The court noted, "Mother still [had] a substance abuse issue that remain[ed] unsolved," and that "[w]hile Mother did not use illegal substances during her recent incarceration for drug related offenses," DCS had shown that "more than a few months of sobriety in a controlled setting [was] necessary to remedy the circumstances that lead to the children coming into care." It concluded Mother's history of non-participation in reunification services supported a finding that her substance abuse issues would continue for a prolonged and indeterminate period.

¶9        Finally, the superior court found severance was in the children's best interests. It found that although the children were not in an adoptive placement at the time of the hearing, DCS had found a new placement that was related to them and "there [was] no question maintaining a relationship with Mother would be detrimental to the children." It also found Mother had no real relationship with the children and continued to have unresolved substance abuse issues, and it stated the children deserved a home free from substance abuse.

¶10       Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

**DISCUSSION**

¶11       Mother argues the superior court abused its discretion by severing her parental rights when: (1) insufficient evidence showed severance was in the children's best interests; (2) the court denied Mother's

4

request for a continuance; and (3) insufficient evidence supported the grounds for severance.

I.      Standard of Review

**¶12**        As the trier of fact in a severance proceeding, the superior court is in the best position to weigh evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). We therefore view the evidence and reasonable inferences to be drawn therefrom in the light most favorable to affirming the court's order, *id.*, and we will not reverse unless no reasonable evidence supports its factual findings, *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010). If reasonable evidence supports any one ground for severance, we need not address an appellant's arguments pertaining to any other ground. *Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017). Finally, "[m]otions to continue are addressed to the sound discretion of the trial court and its decision will not be reversed absent a clear abuse of discretion." *Yavapai Cty. Juv. Action No. J-9365*, 157 Ariz. 497, 499 (App. 1988).

II.     Best Interests

**¶13**        Mother argues insufficient evidence supports the superior court's best interests finding. She asserts, in part, that she made substantial strides towards reunification, demonstrated a clear plan for remaining sober outside of jail, and had a bond with the children. She also asserts severance was not in the children's best interests because at the time of the severance hearing, the children were placed separately and DCS had provided no confirmed adoptive placement.

**¶14**        Before severing parental rights, the superior court must find by a preponderance of the evidence that severance is in the children's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). In doing so, the court "must include a finding as to how the child[ren] would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). DCS need not show it has a specific adoption plan for the children; it must only show the children are adoptable or "would benefit psychologically from the stability an adoption would provide." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994). The court may consider the existence and effect of a bonded relationship between a biological parent and her children, but this factor is not dispositive in

addressing best interests. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 12 (App. 2016).

**¶15**　　　Although we recognize and commend Mother's progress towards sobriety, sufficient evidence supports the superior court's best interests finding. The DCS case manager testified severance was in the children's best interests because the children had been in an out-of-home placement for a significant period, deserved permanency, and were adoptable. The case manager acknowledged the children were not placed together in an adoptable placement at the time of the hearing, but she said DCS had found a potential placement that the children knew and that would allow the children to be adopted together. She further stated that even if the potential placement were unable to adopt, the children were adoptable and DCS could find another adoptive placement. Because this evidence is sufficient to support the superior court's best interests finding, we affirm it.

III.　　Request for Continuance

**¶16**　　　Mother next argues the superior court abused its discretion by denying her request for a continuance, asserting there was no valid reason for the denial. She emphasizes that at the time of the denial, DCS had not found adoptive placements for the children and the only potential adoptive placement would entail a several-month wait. We will not disturb the court's ruling on a motion to continue absent a clear abuse of discretion. *No. J-9365*, 157 Ariz. at 499.

**¶17**　　　"When an action has been set for trial, hearing or conference on a specified date by order of the court, no continuance of the trial, hearing or conference shall be granted except upon written motion setting forth sufficient grounds and good cause, or as otherwise ordered by the court." Ariz. R. Fam. Law P. 77(C)(1). The superior court addresses motions to continue in its sound discretion. *See Henderson v. Henderson*, 241 Ariz. 580, 589, ¶ 29 (App. 2017).

**¶18**　　　We find no abuse of discretion. In asking for a continuance, Mother told the superior court that she was soon to be released from jail, committed to regaining custody of her children, had registered for an outpatient drug abuse assessment through her probation department, and had arranged an apartment and job. She also noted there was no permanent placement secured for the children at the time. Section 8-533(B)(8)(a), however, does not require the court to wait until the children can be placed with an adoptable placement or the resolution of the parent's criminal case

before proceeding with a severance hearing, and such an interpretation would "indefinitely delay determinations regarding children whose best interests are at risk and require expedient consideration." *See Pima Cty. Juv. Severance Action No. S-2462*, 162 Ariz. 536, 538 (App. 1989). DCS offered Mother services for over three years before the severance hearing, but Mother failed to participate during that time. Additionally, the court had granted Mother two previous continuances. Under these circumstances, the superior court did not abuse its discretion in denying Mother's motion to continue.

IV.     Grounds for Severance

**¶19**         Mother argues insufficient evidence supports the grounds for severance because she had been sober for ten months, left jail, and entered in-patient treatment at the time of the severance hearing.

**¶20**         Pursuant to A.R.S. § 8-533(B)(8)(a),[5] the superior court may sever parental rights if "[t]he child has been in an out-of-home placement for a cumulative total period of nine months or longer pursuant to court order . . . and the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement."[6] Severance on this ground is not appropriate when a parent has made "appreciable, good faith efforts to comply with remedial programs outlined by [DCS]," but it may be appropriate in cases where the parent "disappears for months at a time and makes only sporadic, aborted

---

[5]     Because we conclude sufficient evidence supported severance under A.R.S. § 8-533(B)(8)(a) for all three children, we do not address Mother's claims pertaining to A.R.S. § 8-533(B)(3), (8)(b), or (8)(c). *See Crystal E.*, 241 Ariz. at 577, ¶ 5 (clarifying that if clear and convincing evidence supports any one ground for severance, appellate court need not address claims pertaining to other grounds).

[6]     Mother does not challenge the superior court's findings that DCS made diligent efforts to provide her with appropriate reunification services or that the children were in an out-of-home placement for over three years. She therefore concedes the accuracy of those findings, *see Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 13 (2000), and we address only whether sufficient evidence supports the court's finding that Mother "ha[d] substantially neglected or wilfully refused to remedy the circumstances that cause[d] the child[ren] to be in an out-of-home placement[,]" *see* A.R.S. § 8-533(B)(8)(a).

attempts to remedy" the circumstances. *See Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 576 (App. 1994).[7] At a minimum, A.R.S. § 8-533(B)(8)(a) requires the parent demonstrate "something more than trivial or de minimus efforts at remediation." *Id.* at n.1.

**¶21** Although, as Mother notes, the children's guardian ad litem testified it was "possible, very possible, more likely than not" that Mother would be in a position in the near future to parent the children, ample evidence supports the superior court's finding that Mother "ha[d] substantially neglected or wilfully refused to remedy the circumstances that cause[d] the child[ren] to be in an out-of-home placement" pursuant to A.R.S. § 8-533(B)(8)(a). The DCS case manager testified DCS did not believe Mother had made the necessary behavioral changes for reunification with the children because she had not demonstrated lasting sobriety or stability, had only recently been released from incarceration and would need to "start her life over," and would need nine to twelve months to be able to demonstrate the behavioral changes necessary to successfully reunite with the children. Similarly, she testified DCS still believed Mother was unable to parent the children because she had been unable to demonstrate stability or sobriety outside an institutional setting over the past three years, failed to complete any of the services offered to her, and had no in-person contact with the children since 2014. She acknowledged Mother had completed a substance abuse assessment through TERROS, but she said that before her incarceration, Mother tested sporadically at TASC, was eventually closed out of TASC and TERROS due to lack of engagement, and tested positive for methamphetamine, cocaine, and marijuana during the severance proceedings. She noted Mother was unable to test from October 2016 to the date of the hearing because Mother was incarcerated for a drug-related offense, Mother's parent aide was closed out unsuccessfully after three months due to no contact from Mother, and Mother did not attend her psychological evaluation. DCS, TERROS, and TASC records support this testimony. This evidence supports the superior court's finding that Mother "ha[d] substantially neglected or wilfully refused to remedy the circumstances that cause[d] the child[ren] to be in an out-of-home placement" pursuant to A.R.S. § 8-533(B)(8)(a); therefore, we affirm the court's findings regarding the grounds for severance.

---

[7] These cases were transferred from the Arizona Department of Economic Security to DCS in May 2014. *See* 2014 Ariz. Sess. Laws, ch. 1, § 157(D) (2nd Spec. Sess.).

**CONCLUSION**

¶22        We affirm the superior court's order severing Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:  AA