NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SALVATORE D., *Appellant*,

*v.*

WHITNEY D., S.D., *Appellees*.

No. 1 CA-JV 17-0324
FILED 12-21-2017

Appeal from the Superior Court in Maricopa County
No. JS 517866
The Honorable Shellie F. Smith, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender, Phoenix
By Kathryn E. Harris
*Counsel for Appellant*

Brown, Naegle, Crider & Jensen, Mesa
By Kay A. Jones, Brad J. Crider
*Counsel for Appellees*

_____

**MEMORANDUM DECISION**

Judge Patricia A. Orozco[1] delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Jennifer B. Campbell joined.

_____

**O R O Z C O**, Judge:

¶1　　　　Salvatore D. (Father) appeals an order terminating his parental rights to S.D. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2　　　　S.D. was born to Whitney D. (Mother) and Father in September 2009, in California. Shortly after S.D. was born, Father committed an act of domestic violence against Mother and the couple separated.  In December 2011, Mother was granted sole legal and physical custody and Father was permitted supervised visitation with S.D. twice weekly.  This order was based on a partial child custody investigation wherein the investigator recommended that Mother retain sole legal and physical custody and that Father's visitation be supervised.

¶3　　　　In 2013, Father was released from prison, and sought to recommence visitation with S.D.  The court ordered reunification counseling, which was conducted in July.  The clinical psychologist who conducted the counseling noted that Father did not attend three out of eight scheduled reunification sessions with S.D.  Despite Father's absences, the psychologist observed that the two had successfully reunified.  He warned, however, that S.D. had a fragile psyche, was "susceptible to abandonment issues," and that Father had to be "<u>consistent</u>" and show up to every future visit.  Approximately three months later, Mother petitioned the court to suspend the unsupervised visitation because Father was not spending his visitation with S.D., which was distressing to S.D., and because Father's new wife had reported to Mother that Father had abused her.  Mother recalled that Father's last visit with S.D. took place in January 2014.

_____

[1]　　　The Honorable Patricia A. Orozco, retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

¶4          At the end of 2014, Father filed a contempt motion because Mother was not complying with the visitation schedule. According to Father, the court set a date for a mediation, but nothing ever happened because Mother "went dark, she disappeared." Mother acknowledged that she moved to Arizona with her husband (Stepfather) and S.D. in November 2014. She conceded that she did not file anything in the California courts before she relocated, but she left her father's business address in California as her forwarding address for mail.[2]

¶5          Father had no contact with Mother until she filed her Petition for Termination of Parent-Child Relationship on October 16, 2015. The superior court set the contested private severance hearing for September 1, 2016. The hearing was continued to January 4, 2017 following a substitution of judge. On the morning the hearing was scheduled to begin, Father moved to continue the hearing because he was incarcerated. The new hearing date was set for April 10, 2017. On March 20, Mother disclosed a severance social study. On the day of the hearing, Father moved to continue, arguing he had just "recently been released from 180 days of incarceration" and needed time to "gather his information and exhibits" and refute the "allegations and statements as outlined in the home study."

¶6          The superior court denied Father's motion to continue and proceeded with the hearing on April 10. Mother, Stepfather, the social study author—Polly Thomas—and Father testified at the hearing. Following the hearing, and after considering the testimony and exhibits, the superior court granted the Petition for Termination of the Parent-Child Relationship. Father timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

¶7          A court may terminate parental rights if it finds any of the enumerated grounds in A.R.S. § 8-533(B) by clear and convincing evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 280, ¶ 1 (2005). The court must also find by a preponderance of the evidence that termination is in the child's best interests. *Id.* at 284, ¶ 22. We view the evidence in the light most favorable to sustaining the court's findings, *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008), and we will not reverse an order terminating parental rights unless the court's factual findings are unsupported by any reasonable evidence, *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377,

---

[2]     Mother's address was protected by a criminal protective order issued out of California.

¶ 2 (App. 1998). "Motions to continue are addressed to the sound discretion of the trial court and its decision will not be reversed absent a clear abuse of discretion." *Yavapai Cty. Juv. Action No. J-9365*, 157 Ariz. 497, 499 (App. 1988).

**¶8** Father first argues that the superior court "deprived [him] of his right to a fair trial" by denying his motion to continue. He contends that the circumstances surrounding his "inability to procure his evidence prior to the January 4, 2017, and April 10, 2017, trial dates were unforeseen and unavoidable" and thus constituted extraordinary circumstances. We disagree. As stated *supra*, the severance hearing was initially scheduled for September 1, 2016. Father claims he was taken into custody approximately one month *after* the first hearing date passed and he was not released until a month-and-a-half before the continued severance hearing. When asked why he did not procure or disclose any documents or witnesses prior to the *September 2016* hearing date, he answered, "I'm not sure, to be honest with you. . . . I'm not sure on that." We are also unpersuaded that Father's incarceration was "unforeseen and unavoidable" because he had been incarcerated for the exact same probation violation—crossing state lines—twice before.

**¶9** Father also admitted that Thomas contacted him twice and on neither occasion did he "provide her with any documentation in support" of the testimony he offered at the hearing. When Father spoke to Thomas, he said that his attorney would provide her with supporting documentation, but Thomas testified that after two email exchanges with his attorney, she received nothing. Father was thus given an opportunity to refute the "allegations and statements as outlined in the home study" and declined to do so. Moreover, Father had the opportunity to cross-examine Thomas on the accuracy and partiality of her report and give his own testimony to refute the allegations and recommendations, and he did both. The superior court accordingly acted within its discretion in denying Father's motion to continue.

**¶10** Father next argues that the superior court erred in finding that he had not established just cause for failing to maintain contact with S.D. for a period of six months. *See* A.R.S. §§ 8-531(1) (failing to maintain a normal parental relationship without just cause for six months is prima facie evidence of abandonment), -533(B)(1) (abandonment as one of the enumerated termination grounds). He argues that Mother "absconded" with S.D. to Arizona, interfered with his efforts to see S.D., and concealed her whereabouts. Mother had a criminal protective order in place, however, that made her address inaccessible to Father. "When

circumstances prevent the [] father from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 22 (2000) (citation omitted). The record here does not demonstrate that Father acted persistently or vigorously in attempting to maintain his relationship with S.D.

¶11        First, Father admitted that he had not paid child support since July 2014. He also acknowledged that he had not attempted to send any gifts, cards, or letters to S.D. since October 2014. Second, although he claims that, through his attorney, he undertook efforts to locate S.D. and exercise his rights to visitation—filing "a motion," sending a process server to Mother's last known workplace, mailing two "certified documents" to Mother's father's business which were "returned to sender," and hiring a private investigator—he provided no evidence to support his claims. Father also testified that he intended to produce two witnesses and emails he asserted would demonstrate Mother's malicious intent, but failed to disclose or produce any witnesses or exhibits on his behalf at the hearing. Third, Father admitted that the criminal protective order Mother had in place against him did not prohibit him from filing legal documents pertaining to his visitation with S.D. Aside from his own testimony, Father produced nothing to support his assertions that he made a credible effort to continue supporting S.D. and maintaining a relationship with her.

¶12        Finally, Father argues that the court erred in finding that termination was in S.D.'s best interests. In finding that termination was in S.D.'s best interests, the court relied on the written report and testimony of Thomas and the observations of S.D.'s guardian ad litem, Ann Olson. Both supported termination as being in S.D.'s best interests. Olson noted that S.D. wants her last name to be the same as her other family members and that "she very much so wants to be adopted." *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2, ¶ 1 (2016) ("[I]n a private proceeding to sever parental rights, just as in state-initiated proceedings, a juvenile court may conclude that a proposed adoption benefits the child and supports a finding that severance is in the child's best interests."). Thomas observed S.D. in the home with Mother and Stepfather and testified that S.D. is a "very active, articulate, bright, verbal child." She opined that S.D. is "very bonded" to Stepfather and she overheard S.D. "spontaneously refer to him as dad." Thomas believed the relationship between S.D. and Stepfather was "positive" and "strong" and that Stepfather had "provided for her physical, her emotional and her financial needs" as though she was "his own child." Stepfather testified that he wants to adopt S.D. and he has already taken

steps toward adopting her. Reasonable evidence supports the court's finding that severance was in S.D.'s best interests.

## CONCLUSION

¶13 For the foregoing reasons, we affirm the order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA