NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANDREW P., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.P., A.P., *Appellees*.[1]

No. 1 CA-JV 21-0265
FILED 3-24-2022

Appeal from the Superior Court in Maricopa County
No. JD 530180
The Honorable Kristin Culbertson, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Scottsdale
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Defendant, Appellee, Department of Child Safety*

---

[1]     The caption is amended as reflected above.  This caption shall be used on all further documents filed in this appeal.

---

**MEMORANDUM DECISION**

---

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Randall M. Howe and Judge James B. Morse Jr. joined.

---

**C A M P B E L L**, Judge:

**¶1**        Andrew P. appeals from the termination of his parental rights to his two children on the grounds of abandonment and out-of-home placement. *See* A.R.S. § 8-533(B)(1), (B)(8). He disputes the juvenile court's finding that the Department of Child Safety (DCS) made appropriate reunification efforts before severance. *See* § 8-533(B)(8) (requiring agency responsible for child to make "a diligent effort to provide appropriate reunification services" before severance). Because the record supports that finding, we affirm.

**BACKGROUND**

**¶2**        Andrew P. (Father) and Jade P. (Mother) are the biological parents of Sophia and Liam.[2] In late 2019, DCS received a report alleging that Father had physically abused nine-month-old Sophia. DCS investigated but was unable to locate Father. Mother, who was then four-months' pregnant with Liam, told DCS that she was using heroin, that Father was using cocaine, and that Father was no longer involved in Sophia's life.

**¶3**        In January 2020, DCS took Sophia into care along with another child of Mother's, Lauren, who disclosed domestic violence between Father and Mother.[3] DCS served Father in-person with a petition for dependency that month, but Father did not respond to DCS's efforts to contact him or personally appear at hearings until May 2020.[4]

---

[2]        We use pseudonyms to protect the identities of the minors.

[3]        Lauren is not a party to this appeal.

[4]        In its initial service, DCS mistakenly provided notice of a hearing that had already occurred. DCS attempted to re-serve Father three times in late January but was unsuccessful. DCS eventually re-served Father with

¶4          In June 2020, Liam was born. Father visited him in the hospital, but did not sign Liam's birth certificate because of his concerns about his paternity. After learning that Mother was still using heroin and that Liam had been exposed to several illegal substances, DCS took Liam into care as well.

¶5          Early in August 2020, the juvenile court adjudicated both Sophia and Liam dependent regarding Father, approved DCS's case plan of family reunification, and ordered Father to complete a hair-follicle drug test. DCS referred Father for the follicle test and random urine testing, a substance-abuse assessment, paternity testing (for Liam), supervised visitation with Sophia, and transportation services. DCS also consulted with a psychologist, who recommended Father complete a psychological evaluation once he had demonstrated 30 days of sobriety.

¶6          During August, Father submitted two urine samples, both of which tested positive for marijuana. He missed eight additional urine tests that month and twice refused the court-ordered follicle test. Father completed the substance-abuse assessment that month, admitting that he used marijuana without a medical marijuana card to alleviate back pain. But the provider did not diagnose Father with a substance-abuse disorder or recommend treatment. Father initially refused to take a paternity test but submitted to a test at the end of the month which established his paternity of Liam.

¶7          That summer, Father missed more than half of his supervised visits with Sophia. He missed some of the visits because, as DCS's case manager testified, the taxi company DCS hired "stopped transporting [him] because he would consistently no-show for the cab." Because of the missed visits, DCS cancelled Father's visitation services in September, and he did not contact DCS to resume visits until December. Father resumed regular visitation with both children in January 2021, but he insisted on feeding his children "whatever he want[ed]," giving his infant son pizza and french fries rather than the formula DCS recommended, even after the food gave Liam digestive problems. Father continued to miss all his scheduled urine tests throughout the summer, fall, and the first few months of 2021.

¶8          In March 2021, DCS petitioned to terminate Father's rights to Sophia and Liam. Father then began submitting urine tests, providing ten negative samples from March 31st to June 4th. During that period, however,

---

proper notice in March 2020 by mail, by publication, and by posting copies outside his residence.

he also missed nine scheduled urine tests and refused three follicle tests. In light of the negative tests results when Father did test, DCS referred Father for a psychological evaluation, scheduling him for an appointment at the end of June.

**¶9**         The juvenile court held the severance hearing in June of 2021, before the evaluation could be completed. After taking the matter under advisement, the court terminated Father's parental rights as to Sophia on the grounds of abandonment and the grounds of six-, nine-, and fifteen months' out-of-home placement; and as to Liam on the grounds of six months' out-of-home placement. Father timely appealed from the termination ruling.[5]

## DISCUSSION

**¶10**         On appeal, Father challenges only the juvenile court's finding that DCS made appropriate reunification efforts before severance. "We review the court's termination decision for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings." *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579, ¶ 10 (2021). We review legal issues de novo including the interpretation and application of A.R.S. § 8-533. *Id.* at 580, ¶ 10.

**¶11**         To obtain termination of parental rights on the grounds of six-, nine-, or fifteen months' out-of-home placement, DCS must prove by clear and convincing evidence that it has "made a 'diligent effort to provide appropriate reunification services.'"[6] *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶¶ 17, 19 (App. 2009) (quoting A.R.S. § 8-533(B)(8)) (explaining statutory and constitutional obligation of agency caring for children to make "reasonable efforts" to reunify family). DCS need not "provide every

---

[5]     The juvenile court also terminated Mother's parental rights to Lauren, Sophia, and Liam. Mother appealed from the termination, but we dismissed her appeal after her counsel averred that there were "no non-frivolous issues to raise" and Mother declined to file a pro se opening brief.

[6]     Because DCS met its obligation to provide services under the out-of-home placement grounds of § 8-533(B)(8), we need not address Father's argument on the termination of his rights to Sophia on the abandonment ground of § 8-533(B)(1). *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

conceivable service" or "undertake rehabilitative measures that are futile." *Id.* at 94, ¶ 20 (internal quotation marks omitted). Instead, it must only "provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child" and "undertake measures with a reasonable prospect of success." *Id.* (internal quotation marks omitted).

¶12  Here, the juvenile court found that DCS made reasonable and diligent efforts "by providing an array of reunification services" and that "had those services been successfully completed, reunification likely would have occurred." The record reasonably supports the court's findings. DCS provided Father with a host of services designed to demonstrate and strengthen his ability to parent his two children during the year-and-a-half his case was pending. But throughout the case, Father failed to maintain regular contact with DCS, failed to establish prolonged sobriety, and failed to show an ability or willingness to appropriately care for his children even after establishing regular visitation. *See In re Pima Cnty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 97 (1994) ("When . . . circumstances prevent the unwed father from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible . . . ."). Given Father's lack of engagement, it would have been futile for DCS to prolong the case to provide Father further services.

¶13  Father argues that "transportation issues" and delays in renewing supervised visitation services hampered his ability to visit his children and that DCS's "late approval" for the psychological evaluation prevented it from identifying appropriate services. The transportation issues arose, however, only because Father repeatedly "no-showed" for scheduled pickups. And the gap in supervised visitation occurred because Father failed to promptly contact DCS to resume visitation after he missed most of his scheduled visits and DCS cancelled visitation. Likewise, the delay in referral for the psychological evaluation was caused by Father's consistent failure to submit to regular urine testing and his repeated refusal to take the court-ordered follicle drug test. In sum, the delays in services were caused by Father's lack of diligence, not by DCS—a factor supporting termination. *See* § 8-533(B)(8)(b) (parent's failure to remedy circumstances causing six-months out-of-home placement may be shown by "refusal to participate in reunification services").

¶14  Father also contends that DCS's policy of delaying a referral for a psychological evaluation until a parent demonstrates 30 days of sobriety violates its obligation to provide diligent services. But a psychological evaluation of a parent who has not demonstrated sobriety is

exactly the type of futile measure DCS need not undertake. *See Deborah D. v. Dep't of Child Safety*, 1 CA-JV 2017-0046, 2017 WL 4129187, at *2, ¶ 11 (Ariz. App. Sept. 19, 2017) (mem. decision) (approving of argument that "without demonstrated sobriety, [psychological] evaluations are considered invalid"). Given the logistical challenges of ensuring a parent is sober at the time of the evaluation, a prolonged sobriety requirement is a reasonable way, as DCS's case manager testified, to ensure the accuracy of the assessment. This is particularly true here because DCS had reason to believe Father was regularly using marijuana and possibly cocaine. DCS informed Father of the sobriety requirement early in the case, but he chose to engage in activities that would run afoul of this prerequisite and consistently failed to submit to required drug testing. We need not decide the reasonableness of the 30-day duration here because, during the period Father was providing negative samples, he never went more than two weeks without missing a test.

**¶15**     To the extent Father challenges the juvenile court's denial of his motion to continue the severance hearing until the psychological evaluation could be completed, we find no abuse of discretion. *See Yavapai Cnty. Juv. Action No. J-9365*, 157 Ariz. 497, 499 (App. 1988) (explaining motion to continue reviewed for "clear abuse of discretion"). The court found that Father had "ample time to demonstrate sobriety" so the evaluation could be completed before trial, that "[i]t was his choice to delay the process," and that further delay was not in the children's best interests. The record supports these findings and the court's reasoning.

## CONCLUSION

**¶16**     For the reasons above, we affirm the ruling, filed August 30, 2021, terminating Father's parental rights to his children, Liam and Sophia.



AMY M. WOOD • Clerk of the Court
FILED:
            JT