IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO Z.L.

No. 1 CA-JV 23-0053
FILED 9-5-2023

Appeal from the Superior Court in Maricopa County
No. JD40694
The Honorable Julie Ann Mata, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

---

## OPINION

Vice Chief Judge Randall M. Howe delivered the opinion of the court, in which Judge Jennifer M. Perkins and Judge Daniel J. Kiley joined.

---

**H O W E**, Judge:

¶1        Daniel T. ("Father") appeals from the juvenile court's order terminating his parental rights to his daughter, Z.L., born in May 2012, on the grounds of time in out-of-home placement and substance abuse. He contends, among other arguments, that on the day of trial, the juvenile court erred in denying his request to continue the trial to hire new counsel because he did not show good cause.

¶2        The court did not err when it declined to continue the trial, however, because Father's general allegation of lost confidence in counsel did not show good cause to justify a continuance or resulting prejudice from the denial. Because the court did not err on this issue or the other issues discussed below, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3        We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). Father and Z.L.'s biological mother were never married.[1] Before the Department of Child Safety's involvement, Z.L. lived with Father and his girlfriend ("Girlfriend").

¶4        One day in June 2020, Z.L. witnessed Father slap, shove, and choke Girlfriend at their home. Girlfriend then drew a gun on Father because she feared for her life, got in her car, and drove away. Father took a shotgun and, with Z.L. in tow, followed Girlfriend in another car while texting her that he wanted to shoot her. The next day, at a gas station with Father, Z.L. witnessed him threaten another individual with physical violence after the individual made a racist comment to him. The other individual then pulled a gun on Father.

---

[1]        Z.L.'s mother's parental rights have already been terminated. She is not a party to this appeal.

¶5        Police reports of the domestic violence incidents were sent to the Department. The Department then petitioned for Z.L.'s dependency on the grounds of neglect as to both Father and Z.L.'s mother. The Department removed Z.L. from her home in late June, initially placed her with family members, but removed her from the family after a few months because of safety concerns. Z.L. then lived with a foster family.

¶6        During a forensic interview early in the dependency proceeding, Z.L. reported to the Department that she was scared of both Father and Girlfriend to the point of urinating on herself out of fear. She stated that Father had "whoop[ed]" her repeatedly with a belt if she failed to complete her chores; made her stay in a push-up position for long periods of time; and threatened her, called her names, and made aggressive gestures to instill fear in her. Z.L. also stated that while Father was smoking marijuana, he blew smoke into her mouth. Father and Z.L. both tested positive for methamphetamine.

¶7        Because the case plan was family reunification, the Department offered Father services, including substance-abuse treatment, drug testing, a parent aide, counseling, parenting education, transportation to services, and supervised visits. Father missed many scheduled drug tests. But the few times he did test, he was positive for methamphetamine and presumptive positive for fentanyl.

¶8        During Father's substance-abuse intake, he admitted that he had been abusing substances since he was 18 years old. The substance-abuse treatment closed out, however, because he did not complete the recommended services. His parent aide service also closed out unsuccessfully because he failed to engage even after the Department requested more time for him to complete it. The Department then submitted another referral for parent aide services. Father failed to complete this parent aide service, too; he refused to do more skill sessions and accused the Department of "setting him up to fail." Father also often canceled visits with Z.L. without telling the case aide. Z.L. often asked the case aide whether "Daddy will actually be there and not cancel this time." Father also showed up late, had visits end early, or even had visits canceled because of his irate behavior. At one point, Father fell asleep during a visit. The court ordered four make-up visits, but Father made up only one.

¶9        Father was also scheduled for a psychological evaluation but was sent home because he smoked marijuana before the appointment. He did not show up for his rescheduled appointment and did not attempt to reschedule again. After February 2022, Father stopped participating in

services. He also stopped contacting Z.L. and did not respond to the Department's attempts to schedule visits with her.

¶10        The Department moved to terminate Father's parental rights on the 15 months in out-of-home placement, history of chronic substance abuse, and length of incarceration grounds. A month later, police investigated him for selling fentanyl out of his apartment. Father was arrested and charged with illegal control of an enterprise, money laundering, sale or transportation of dangerous drugs, possession of drug paraphernalia, possession of dangerous drugs, and misconduct involving weapons. He pleaded guilty to two counts of conspiracy to commit sale or transportation of dangerous drugs, one count of attempted possession of narcotic drugs for sale, and one count of misconduct involving weapons. He was sentenced to concurrent prison terms totaling three years with terms of probation following. His scheduled release date is October 2024.

¶11        At the beginning of the termination hearing, Father stated that he wanted to "fire" his counsel and hire new counsel because his counsel was not "fighting hard enough." The court told Father that firing his counsel meant that he would have to represent himself because the trial would proceed that day. The court ultimately denied Father's request for a continuance to allow him to secure new counsel because he did not have good cause.

¶12        During the evidentiary portion of the hearing, the Department case manager testified that Father participated inconsistently in substance-abuse treatment and drug testing. She also testified that Father had not demonstrated sobriety outside of prison and that substance abuse remained an "ongoing concern." She added that Z.L. was upset when Father canceled visits and eventually chose not to have visits or contact with Father. She added that Z.L. had been out of the home since June 2020, over 15 months, which was before Father's incarceration. She noted that Z.L. wanted to be adopted by her foster family rather than have a guardianship. She testified that Z.L. stated, "I want it to be safe forever."

¶13        The court terminated Father's parental rights on the substance abuse and 15 months in out-of-home placement grounds. On the 15-month ground, the court found that Z.L. had been out of the home for more than 15 months and that the Department had made diligent efforts in "providing an array of reunification services." The court noted that "had those services been successfully completed, reunification likely would have occurred." The court found that Father did not demonstrate sobriety or engage consistently in services, including visitation. Further, the court found that

his "ongoing substance abuse, couple[d] with anger management, domestic violence, and impulsivity create a substantial likelihood Father will not be capable of parenting appropriately in the foreseeable future." Although the court found that Father did make some improvement, those improvements were made in custody; the court was not convinced that Father would make appropriate parenting decisions outside of custody.

¶14　　　　The court also found termination in Z.L.'s best interests because she was adoptable, she wanted her foster family to adopt her, and she was thriving with her foster family. Further, the court found that she was not bonded to Father, feared him, and had refused contact with him since August 2022. Father timely appealed.

## DISCUSSION

### I.　　Motion to Continue

¶15　　　　As an initial matter, Father argues that the court erred and deprived him of his right to counsel when it denied his request to continue the trial to hire new counsel. Because motions to continue are within the trial court's sound discretion, we review the denial of Father's motion for a clear abuse of discretion, which we will find only if he demonstrates prejudice. *State v. Forde*, 233 Ariz. 543, 555 ¶ 18 (2014); *Yavapai Cnty. Juv. Action No. J-9365*, 157 Ariz. 497, 499 (App. 1988). A party's motion to continue "must be made in good faith and must state good cause for the continuance." Ariz. R.P. Juv. Ct. 318(a). Motions must also be in writing unless the court authorizes otherwise. Ariz. R.P. Juv. Ct. 316(a).

¶16　　　　The court did not abuse its discretion in finding that Father's desire to hire new counsel was not good cause for a continuance. Although Father had long notice of the impending trial, he did not voice any concerns about his counsel before the day of trial. Also, when he requested to hire new counsel and a continuance of the trial so that he could do so, he did not provide specific allegations about why he wanted new counsel, asserting only that his counsel was not "fighting hard enough." In the criminal context, "[a] single allegation of lost confidence in counsel does not require the appointment of new counsel, and disagreements over defense strategies do not constitute an irreconcilable conflict." *State v. Cromwell*, 211 Ariz. 181, 186 ¶ 29 (2005); *see Morris v. Slappy*, 461 U.S. 1, 14 (1983) (right to counsel does not guarantee a "meaningful relationship" with counsel); *cf. State v. Moody*, 192 Ariz. 505, 507 ¶ 13, 509 ¶ 23 (1998) (holding that defendant was entitled to new counsel because the record was "replete with examples of a deep and irreconcilable conflict" with his counsel). Nothing indicates that

this principle should not apply with equal force to a parent's right to counsel in termination proceedings. *See, e.g.*, *Daniel Y. v. Ariz. Dep't of Econ. Sec.*, 206 Ariz. 257, 263 ¶ 25 (App. 2003) (relying on *Moody* and similar criminal case law in concluding that "'irreconcilable differences' between client and counsel, without more, is not sufficient to merit forfeiture of the right to counsel without advance warning").

**¶17** Thus, the court did not abuse its discretion in denying the motion to continue when Father "failed to exercise due diligence in preparing for trial." *State v. Barr*, 217 Ariz. 445, 448 ¶ 10 (App. 2008). And he does not now demonstrate how he was prejudiced in having his counsel represent him and in not having the trial continued. *See Walsh v. Walsh*, 230 Ariz. 486, 494 ¶ 24 (App. 2012) (stating this court will reverse only if a party suffers prejudice from the error, and the prejudice "appear[s] affirmatively from the record") (internal quotation marks omitted). Therefore, the court did not err.

## II.    Termination

**¶18** Father argues that the juvenile court erred in terminating his parental rights to Z.L. We review a juvenile court's termination determination for an abuse of discretion. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58 ¶ 9 (App. 2015). The juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts. *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004). Due process requires that we assess whether a reasonable factfinder could conclude, based on the record, that the Department met its clear and convincing evidentiary burden to sustain the termination of parental rights. *See Santosky v. Kramer*, 455 U.S. 745, 747–48 (1982). We will uphold the court's findings of fact "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451–52 ¶ 19 (App. 2007).

**¶19** To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one statutory ground to do so under A.R.S. § 8–533 and by a preponderance of the evidence that termination would be in the child's best interests. A.R.S. § 8–533(B); *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). Under the 15 months in an out-of-home placement ground, the juvenile court must find clear and convincing evidence that (1) the child has been in an out-of-home placement for a cumulative period of 15 months or longer under court order; (2) the Department has made diligent efforts to provide appropriate reunification services; (3) the parent has been unable to remedy the

circumstances that caused the child to be in an out-of-home placement; and (4) a substantial likelihood exists that the parent will be incapable of exercising proper and effective parental care and control in the near future. A.R.S. § 8–533(B)(8)(c); *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 17 ¶ 25 (App. 2019). Father concedes the factual findings under the first two elements in challenging only the third and fourth elements. *See Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960).

¶20        Reasonable evidence supports the court's findings. The record shows that Father has demonstrated an inability to remedy the circumstances that caused Z.L. to be placed in foster care. *See Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330 ¶ 22 (App. 2007) ("Circumstances" are those "existing at the time of the severance that prevent a parent from being able to appropriately provide for his or her child.") (internal quotation marks omitted). The Department had removed Z.L. from the home because she was exposed to substance abuse and domestic violence. Father did not demonstrate sobriety or attempt to improve his sobriety while Z.L. was out of the home. He either did not participate in services or did so inconsistently. His parent aide and substance-abuse treatments both closed out because he failed to participate. He participated infrequently in drug tests, and when he did, he tested positive for methamphetamine and presumptively positive for fentanyl. Other than admitting that he was a marijuana card holder, he did not admit to abusing drugs and did not seek to stop.

¶21        The record establishes a substantial likelihood that Father will not be capable of parenting appropriately in the foreseeable future. The court considered Father's "ongoing substance abuse, couple[d] with anger management, domestic violence, and impulsivity." Father indeed did not demonstrate a sober and crime-free lifestyle leading up to the motion for termination. Nor did he take the opportunity to bond with Z.L. *Maricopa Cnty. Juv. Action No. JS–501568*, 177 Ariz. 571, 577 (App. 1994) (The termination statute's purpose is "to give children who are placed outside the home the opportunity to bond with stable parents after a reasonable period of time, instead of being shuttled from one foster family to the next for as long as it takes their biological parents to assume their responsibilities and take positive steps toward recovery."). Rather, he frequently canceled visits with little to no notice, or the visits were canceled because of his behavior. After February 2022, he refused to participate in visitation and other services altogether. These actions in themselves show that Father would not be capable of parenting Z.L. in the near future. Therefore, the record supports the court's terminating his parental rights on the 15-month ground.

**¶22**      Father argues that the Department did not provide him visitation to bond with Z.L. during his incarceration. The record demonstrates, however, that Father's own conduct contributed to his failure to bond with Z.L. Well before his incarceration, he had opportunities to visit Z.L. but did so inconsistently. He canceled many visits on his own. Z.L. often asked the case aide whether "Daddy will actually be there and not cancel this time." When he did attend visits, he arrived late or left early. He attended one court-ordered make-up visit and did not respond to the Department's attempts to schedule visits. He failed to maintain contact with her.

**¶23**      Further, reasonable evidence supports the juvenile court's finding that termination was in Z.L.'s best interests. Termination of parental rights is in a child's best interests if the child will benefit from the termination or will be harmed if the relationship continues. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018). In determining whether the child will benefit from termination, relevant factors include whether the current placement is meeting the child's needs, an adoption plan is in place, and if the child is adoptable. *Demetrius L.*, 239 Ariz. at 1, 3–4 ¶ 12. Other primary considerations include the child's stability and security, *id.* at 4 ¶ 15, and the parent's rehabilitation efforts, *Alma S.*, 245 Ariz. at 151 ¶ 15.

**¶24**      Here, Z.L. is adoptable, and she wants her foster family to adopt her. Z.L.'s foster family is currently meeting her needs, and Z.L. is doing well in their care. Father's failure to attend visits or participate consistently in services demonstrated that his prospects for rehabilitation are low. If Father's rights are not terminated, Z.L. will remain in foster care, delaying permanency. In addition, Z.L. noted that she preferred adoption over a guardianship plan because she wants "to be safe forever." The juvenile court therefore did not err in finding that termination was in Z.L.'s best interests. Because we find that the juvenile court properly terminated Father's parental rights on the 15-month termination ground, we need not address termination of his parental rights on the substance abuse ground. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251 ¶ 27 (2000).

**¶25**      Because reasonable evidence supports the factual basis underlying the juvenile court's finding of grounds for termination and best interests, the court did not abuse its discretion.

**CONCLUSION**

¶26        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA