NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

GABRIEL A., HEATHER M.,
*Appellants*,

v.

DEPARTMENT OF CHILD SAFETY, G.A.,
*Appellees*.

No. 1 CA-JV 20-0052
FILED 8-6-2020

Appeal from the Superior Court in Maricopa County
No.  JD36622
The Honorable Lori Ash, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant Gabriel A.*

Denise L. Carroll Esq., Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant Heather M.*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

---

**M O R S E**, Judge:

¶1 Gabriel A. ("Father") and Heather M. ("Mother") separately appeal the juvenile court's order terminating their parental rights to G.A. ("Child"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 "We view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citation omitted).

¶3 In September 2018, the Department of Child Safety ("DCS") received a report that Father had been arrested for possession of methamphetamine. Child was with Father at the time of arrest and Father exhibited signs of intoxication and told police that he had used methamphetamine and oxycodone that day. The following month, after DCS received a report that Mother was using illegal drugs, Mother tested positive for methamphetamine and Father damaged Mother's car in anger while Mother was on the phone with a DCS employee. In November 2018, the Child was removed from the home, found dependent as to both parents, and a family reunification plan was implemented.

¶4 DCS referred both Father and Mother (collectively, "Parents") for substance-abuse treatment through TERROS. They struggled to complete this program. Father struggled from the outset. He did not appear for an initial intake assessment and only attended services after he was told that he would be kicked out if he did not respond. Then, in May 2019, Father attended a TERROS group therapy session while heavily intoxicated.

¶5 Father has been diagnosed with numerous mental illnesses, including schizoaffective disorder and post-traumatic stress disorder. He twice attempted suicide in 2019. In mid-2019, Father was referred to a program called LADDERs to address both mental illness and substance

abuse. But Father's participation was inconsistent and he was dropped from the program in December 2019 for poor attendance.

¶6            Father showed no signs of reaching sobriety, missing many drug tests and often failing the others. Father most recently tested positive for illicit drugs in December 2019, barely a month before his severance trial.

¶7            Mother completed her TERROS intake assessment and initially attended treatment. By February 2019, however, she stopped participating and was closed out of the program for lack of engagement. This became a pattern for Mother, she was referred to TERROS several times only to be closed out for lack of participation. Mother twice informed a DCS case worker that she wanted to try a different rehabilitation program, but after identifying a specific program, Mother failed to appear for the scheduled assessment.[1]

¶8            Mother missed several drug tests. Though she tested negative from January 2019 through May 2019, she stopped testing in June 2019 and informed a DCS case manager that she was using controlled substances.

¶9            In October 2019, DCS moved to terminate the rights of both Parents to the Child based on chronic substance abuse and nine-months out-of-home grounds. The juvenile court held a two-day trial. At the start of trial, the juvenile court denied both Parents' requests for a continuance. After the trial, the court found that DCS had proven the statutory grounds alleged and that termination was in the Child's best interests. Father and Mother separately appealed. Their appeals are timely and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶10            The right to custody of one's child is fundamental, but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶¶ 11-12 (2000). Termination of parental rights is generally not favored and "should be considered only as a last resort." *Maricopa Cty. Juv. Action No. JS–500274*, 167 Ariz. 1, 4 (1990).

---

[1] Mother testified that she was told she could not be accepted to this other program. But the DCS case worker testified that, according to the facility, Mother simply did not show up as scheduled. Given that we must view the facts in the light most favorable to upholding the juvenile court's order, we accept the DCS case worker's testimony.

**¶11** To terminate a parent-child relationship, the juvenile court must find that clear and convincing evidence supports one of the statutory grounds for severance. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005); A.R.S. § 8-533(B). Additionally, the court must determine by a preponderance of the evidence that termination of the relationship is in the child's best interests. *Kent K.*, 210 Ariz. at 284, ¶ 22. We review a trial court's termination order for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). We accept the court's findings of fact unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶12** Parents argue that the juvenile court erred in finding that DCS proved the statutory grounds for termination and that termination of parental rights was in the Child's best interests.

## I. Statutory Grounds for Termination.

**¶13** The juvenile court found that Parents' chronic substance abuse, A.R.S. § 8-533(B)(3), and the Child's length of time in out-of-home placement, A.R.S. § 8-533(B)(8)(a), provided statutory grounds for the termination of parental rights. We first address the chronic substance abuse ground.

**¶14** "To terminate parental rights under § 8-533(B)(3), a court must find that: 1) parent has a history of chronic abuse of controlled substances or alcohol; 2) parent is unable to discharge parental responsibilities because of his chronic abuse of controlled substances or alcohol; and 3) there are reasonable grounds to believe that the condition will continue for a prolonged and indeterminate period." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15 (App. 2010).

**¶15** Additionally, "as an element of termination under A.R.S § 8-533(B)(3), [DCS] is required to demonstrate it has 'made a reasonable effort to preserve the family.'" *Vanessa H. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 252, 255-56, ¶ 18 (App. 2007) (citation omitted). This means that DCS must provide services to the parent "with the time and opportunity to participate in programs designed to help her become an effective parent[.]" *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). "Although [DCS] need not provide 'every conceivable service,' it must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 37 (App. 1999) (quoting *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. at 353). DCS is not obligated to provide futile

rehabilitative measures but must undertake measures that have a "reasonable prospect of success." *Mary Ellen C.,* 193 Ariz. at 192, ¶ 34.

**¶16**		Mother argues that her parental rights should not have been terminated because DCS failed to offer her services that had a reasonable prospect of success.

**¶17**		Father argues that there were no grounds to find his condition would continue for an indeterminate period because DCS failed to make reasonable efforts to provide him with services.

**¶18**		DCS argues that Mother waived this argument by failing to raise it before the juvenile court. However, assuming that this argument was not waived, reasonable evidence supports the juvenile court's conclusion that DCS made reasonable efforts to provide Father and Mother with rehabilitative services.

**¶19**		The juvenile court found that DCS offered Parents substance-abuse treatment, substance-abuse testing, parent-aide services, supervised visitation, and psychological evaluations. The court also found that Father was offered a psychiatric evaluation. Parents do not argue that the juvenile court erred in determining these services were offered, but instead assert that more was required of DCS. We address each Parent's arguments separately.

**¶20**		Father argues that DCS failed to provide reasonable services because he was never provided the opportunity to attend residential treatment. However, the record reflects that, during his time with LADDERs, Father had the opportunity to enter residential treatment and declined.

**¶21**		Mother argues that TERROS was an ineffective program for her. Mother says DCS effectively set her up for failure by repeatedly referring her to TERROS instead of a medically supervised rehabilitation program. But "[DCS] is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. at 353. The record indicates that Mother failed to fully engage the services offered and failed to appear at a scheduled meeting with a different rehabilitation facility of her own choosing. Mother's inability to complete her treatment does not mean that DCS's efforts were unreasonable.

**¶22**		Further, Mother testified that she had "a pretty good relationship" with her DCS case worker. She further admitted that DCS,

after hearing her complaints, emailed Mother a list of other facilities that could potentially help her. By Mother's own admission, DCS supported her attempt to find alternative substance-abuse treatment. Still, Mother argues that this was not enough. We disagree. Given the resources provided to Mother, there is reasonable evidence to support the juvenile court's determination that DCS made reasonable and diligent efforts to provide Mother with rehabilitation services.

¶23 We therefore affirm the juvenile court's decision on grounds of substance abuse and thus need not address the time in out-of-home placement ground. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) (stating that when clear and convincing evidence supports any one of the statutory grounds for termination it is unnecessary to address other grounds).

## II. Best Interests.

¶24 Terminating a parent-child relationship is in a child's best interests if the child will benefit from the termination or will be harmed if the relationship continues. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). Relevant factors in this determination include whether: (1) the current placement is meeting the child's needs, (2) an adoption plan is in place, and (3) the child is adoptable. *See id.* at 3-4, ¶ 12. Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018). "The existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests." *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 12 (App. 2016).

¶25 Moreover, "[i]n a best interests inquiry, . . . we can presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Kent K.*, 210 Ariz. at 286, ¶ 35; *see also Maricopa Cty. Juv. Action No. JS-6831*, 155 Ariz. 556, 559 (App. 1988) ("In most cases, the presence of a statutory ground will have a negative effect on the children."). Once a juvenile court finds that a parent is unfit, the focus shifts to the child's interests. *Kent K.*, 210 Ariz. at 285, ¶ 31. Thus, in considering best interests, the court must balance the unfit parent's "diluted" interest "against the independent and often adverse interests of the child in a safe and stable home life." *Id.* at 286, ¶ 35. Of foremost concern in that regard is "protect[ing] a child's interest in stability and

6

security." *Id.* at ¶ 34 (citing *Pima Cty. Juv. Action No. S-114487*, 179 Ariz. 86, 101 (1994)).

**¶26**          Parents argue that the juvenile court erred in finding that termination was in the Child's best interests because they have a strong parental bond with the Child. Though we recognize that Father and Mother have a bond with the Child, familial bonds are not dispositive in determining the Child's best interests. *Dominique M.*, 240 Ariz. at 98, ¶ 12.

**¶27**          Separately, Mother argues that there was no evidence that termination of her rights would provide an affirmative benefit to the Child. "It is well established in state-initiated cases that the child's prospective adoption is a benefit that can support a best-interests finding." *Demetrius L.*, 239 Ariz. at 17, ¶ 16. At trial, Mother admitted that her chronic drug abuse precluded her from caring for the Child. The Child is thriving in his adoptive placement with a paternal relative and, should that placement fall through, other relatives have expressed an interest in providing permanency for the Child.

**¶28**          The juvenile court found that "[e]ven if the parents were given more time and they started all services [immediately] and were able to successfully make all necessary behavioral changes, it would require well over six months" for Parents to reach a point where they could fulfill their parental duties. Accordingly, the court determined that the Child's immediate interest in permanency and stability outweighed Parents' bond with the Child. Because this conclusion is supported by reasonable evidence, we affirm the juvenile court's determination that termination of Parents' rights is in the Child's best interests.

### III.    Denial of Request for Continuance.

**¶29**          On the first day of trial, Father and Mother each requested a continuance to allow them to try other rehabilitation services. The juvenile court denied their requests, and Parents appeal that ruling. We review the grant or denial of a continuance for an abuse of discretion. *Yavapai Cty. Juv. Action No. J-9365*, 157 Ariz. 497, 499 (App. 1988).

**¶30**          Father argues that because "a continued relationship between [the Child] and Father was in [the Child's] best interest" the denial of his requested continuance was an abuse of discretion. Similarly, Mother asserts that the juvenile court "denied the continuance that would have allowed Mother the opportunity to get treatment." We reject these arguments. The juvenile court did not abuse its discretion by rejecting Parents' eleventh-hour request for a continuance. *Cf. id.* at 500 (finding no

abuse of discretion where a motion to continue was denied despite appellant's alleged need for additional time to locate witnesses); *cf. also Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) (rejecting even successful efforts at recovery that were "too little, too late" in a severance action). The court could have rationally concluded that the Child's interest in obtaining permanency and stability outweighed the benefit of allowing the parents yet another attempt at rehabilitation. This is particularly true when, as we have already noted, Parents failed to show any signs that rehabilitation services would lead to a meaningful change.

¶31　　Because there is a reasonable basis to support the juvenile court's denial of the requested continuance, we affirm that decision. *See Mary Lou C.*, 207 Ariz. at 47, ¶ 8.

## CONCLUSION

¶32　　For these reasons, we affirm the juvenile court's order terminating Father and Mother's parental rights to the Child.

